Frederick Anthony DAVIS, Appellant

v.

The STATE of Texas, Appellee

NO. 01-16-00079-CR

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued April 6, 2017

Rehearing En Banc Overruled
June 8, 2017

Ted Wood, Public Defender, Harris County, Texas, 1201 Franklin, 13th Floor, Houston, TX 77002, Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Clint Morgan, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Keyes, Bland, and Huddle.

## OPINION

Jane Bland, Justice

The State charged Frederick Anthony Davis with aggravated assault. He pleaded guilty to the charge and "true" to one enhancement paragraph without a recommendation as to punishment. After a hearing and a pre-sentencing investigation (PSI), the trial court assessed Davis's punishment at 17 years' confinement. On appeal, Davis contends that (1) the trial court lacked jurisdiction over the case because the grand jury that indicted him sat in a different Harris County District Court than the one in which his case was heard; (2) the 17-year sentence is outside the statutory range because his earlier juvenile adjudication cannot apply to enhance his sentence; and (3) the statutory clerk's fee assessed as a court cost is, on its face, an unconstitutional tax. We conclude that the trial court had jurisdiction to hear Davis's case, applied the appropriate sentencing range, and did not err in assessing the fee. We therefore affirm.

## BACKGROUND

This case involves the transfer of a grand jury indictment from one Harris County District Court to another Harris County District Court in which an earlier complaint involving the same offense was pending. The indictment in this case, identified as cause number 1305212, was filed against Davis in the 184th District Court. The indictment was signed by the "178th Foreman of the Grand Jury" and indicts Frederick Anthony Davis for causing serious bodily injury while evading arrest. *See* TEX. PENAL CODE ANN. § 38.04(a) (West 2013) ("A person commits an offense if he

intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him.").

The 184th District Court was the court in which the State had filed an earlier complaint concerning the same conduct, in cause number 1304960. In the caption, the indictment reflects that the indictment was a "refile" of a "related case[ ]," cause number "1304960/ 184." When the indictment was filed, the State moved to dismiss the earlier cause number, 1304960, notating that the "case [was] refiled as cause no. 1305212."

The trial court proceedings were conducted in the 184th District Court. After Davis pleaded guilty to the charged offense and true to the enhancement paragraph, the trial court requested a PSI report and reconvened for the punishment phase. The State proffered the PSI report, which the trial court admitted into evidence. That report reflects that, in the prior juvenile delinquency adjudication alleged to enhance his evading arrest offense, Davis initially received 12 months' probation. When Davis failed to comply with the terms of his probation, the juvenile court revoked it and committed Davis to a juvenile detention facility.[1]

The trial court in this case assessed Davis's punishment at 17 years' confinement and a $40 fee for the services of the clerk of the court. *See* TEX. CODE CRIM. PROC. ANN. art. 102.005(a) (West 2005) ("A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40.").

---

1. The Texas Youth Commission, the state entity in charge of the detention facility to which Davis was committed, was later renamed the Texas Department of Juvenile Justice. *See* Act of June 14, 2013, 83rd Leg. R.S., ch. 1299

§ 17, 2013 Tex. Sess. Law Serv. 3304-05 (West) (changing language in Section 54.04 from "Texas Youth Commission" to "Texas Department of Juvenile Justice").

## DISCUSSION

### I. Jurisdiction

■ Davis first challenges the jurisdiction of the 184th District Court, contending that the court did not acquire jurisdiction over Davis because a grand jury from the 178th District Court presented the indictment, requiring that the case be returned to the 178th District Court.

The State argues that a plea to the jurisdiction may not be raised for the first time on appeal, citing to several older Court of Criminal Appeals cases as well as to *Blades v. State*, *Garcia v. State*, and *Mills v. State*. See *Blades v. State*, 03-14-00634-CR, 2015 WL 4914798, at *1 (Tex. App.—Austin Aug. 12, 2015, no pet.) (mem. op., not designated for publication); *Garcia v. State*, 901 S.W.2d 731 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); *Mills v. State*, 742 S.W.2d 831 (Tex. App.—Dallas 1987, no pet.).

■ However, the Court of Criminal Appeals has more recently held that jurisdiction may be challenged for the first time on appeal. See *Cook v. State*, 902 S.W.2d 471, 480 (Tex. Crim. App. 1995) (jurisdiction defects in indictment may be raised for the first time on appeal). Additionally, *Blades*, *Garcia*, and *Mills* are distinguishable because their holdings apply to jurisdictional challenges based on article 4.16 of the Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. arts. 4.12, 4.16 (West 1966) (providing that when two or more courts have jurisdiction, the court in which the indictment was first filed has jurisdiction except in the case of misdemeanors); *Blades*, 2015 WL 4914798 at *3 (jurisdictional challenge based on article 4.16 to lack of transfer could be waived since the absence of a transfer order is at most a procedural issue); *Garcia*, 901 S.W.2d at 732 (interpreting challenge based on article 4.16 as a challenge to lack

of transfer order which could be waived); *Mills*, 742 S.W.2d at 835 (article 4.16 does not elevate requirement of valid transfer order from a procedural issue to a jurisdictional one). Davis does not base his jurisdictional complaint on article 4.16. Thus, he may raise it for the first time on appeal, and we consider the merits of Davis's jurisdictional challenge.

■ A district court forms and impanels a grand jury and empowers it to inquire into indictable offenses, including aggravated assault. See Tex. Code Crim. Proc. Ann. art. 20.09 (West 2005) ("The grand jury shall inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person."); *Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987). After hearing testimony, a grand jury votes concerning the presentment of an indictment. See Tex. Code Crim. Proc. Ann. art. 20.19 (West 2005) ("After all the testimony which is accessible to the grand jury shall have been given in respect to any criminal accusation, the vote shall be taken as to the presentment of an indictment...."); *Ex parte Edone*, 740 S.W.2d at 448. After presentment, the State files the indictment in a court with jurisdiction to hear the case. *Bourque v. State*, 156 S.W.3d 675, 677 (Tex. App.—Dallas 2005, pet. ref'd); *Cook v. State*, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995). All state district courts within the same county have jurisdiction over the same cases. See Tex. Gov't Code Ann. § 74.094 (West 1999).

In this case, an amended indictment, adding the allegation that the peace officer suffered serious bodily injury during the commission of the crime, was "refile[d]" in the 184th District Court, though it was signed by the 178th District Court's grand

jury foreman before being returned to the 184th District Court.

The 184th District Court had the first-filed related case. Thus, the indictment's return to the 184th District Court conferred jurisdiction over the indictment, because both the 184th District Court and the 178th District Court are district courts constituted in Harris County. As a result, we conclude that the record fails to demonstrate a jurisdictional defect.

### A. District courts within the same county may exchange benches.

The Texas Constitution provides that "District Judges may exchange districts, or hold court for each other when they may deem it expedient, and shall do so when required by law." *See* TEX. CONST. art. V, § 11. The Government Code accomplishes this constitutional directive by placing the authority to exchange benches with the district judges in a given county:

> In a county having two or more district courts, the district judges may adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts as in their discretion they consider necessary or desirable for the orderly dispatch of the business of the courts.

*See* TEX. GOV'T CODE ANN. § 24.024 (West 2012); *see also* TEX. GOV'T CODE ANN. § 74.093 (West 2015) (addressing adoption of local rules of administration for assignment, docketing, transfer, and hearing of cases). Accordingly, subject to local rules of administration, any district court in a county may "transfer a case to another district court" in the county, "hear and determine any case or proceeding pending in another district court in the county without having the case transferred," "sit for another district court in the county and hear and determine any case or proceeding

pending in that court," or "temporarily exchange benches with the judge of another district court in the county," among other powers of transfer or exchange of cases. TEX. GOV'T CODE ANN. § 24.003 (West 2013).

### B. District courts within the same county may exchange benches for preliminary proceedings.

 Davis acknowledges the constitutional provision and the statute implementing it, but contends that these provisions authorize a transfer of the case only after the grand jury returns the indictment to the originating court. These sources of transfer authority, however, impose no such limitation: the discretionary power they confer permits the local judiciary intra-county flexibility in exchanging benches throughout the proceedings in a case—including its preliminary proceedings. *See* TEX. GOV'T CODE ANN. § 74.094 ("[A] district or statutory county court judge may hear and determine a matter pending in any district or statutory county court in the county...."). If a grand jury in one district court returns an indictment in a case, the case nevertheless may be then assigned to any district court within the same county. *See Bourque,* 156 S.W.3d at 678 ("although a specific district court may impanel a grand jury, it does not necessarily follow that all cases returned by that grand jury are assigned to that court"); *Blades v. State,* 03-14-00634-CR, 2015 WL 4914798, at *3 (Tex. App.—Austin Aug. 12, 2015, no pet.) (mem. op., not designated for publication) (holding that 33rd District Court of Blanco County had jurisdiction over case where indictment from another court in same county was first filed in 33rd District Court); *Cannon v. State,* 05-13-01109-CR, 2014 WL 3056171, at *4 (Tex. App.—Dallas July 7, 2014, no pet.) (mem. op., not designated for publication) ("[I]n a county with two or

more district courts, the court impaneling a grand jury will not necessarily, and need not, be assigned an indictment presented by that grand jury.").

The case that Davis provided post-submission supports this conclusion. *See Ex parte Dobbs*, 978 S.W.2d 959, 961 (Tex. Crim. App. 1998). In *Dobbs*, the Texas Court of Criminal Appeals held that a bond condition requiring a defendant to appear in a particular court did not restrict the ability of another district court to take jurisdiction of a subsequent indictment or the defendant or limit the authority of a grand jury of another court to take up the case. *Id.* ("The statutes dealing with bail expand, rather than restrict, the obligation of a defendant to appear in a court in which subsequent proceedings are had, with or without transfer.").

Any procedural challenge to the transfer of a case within a county is thus determined and resolved by proper application of local rule promulgated pursuant to constitutional and statutory authority; it is not a jurisdictional defect. *See* TEX. GOV'T CODE ANN. § 74.094; *Bourque,* 156 S.W.3d at 678. Davis did not challenge the presentment of the indictment or the transfer from the 178th District Court to the 184th District Court. The record shows that the indictment was returned to the 184th District Court because the earlier-filed charge in the "related case" had landed in that court. Because both the 184th District Court and the 178th District Court are in Harris County, the 184th District Court did not lose jurisdiction over the case in accepting presentment of an indictment returned by a grand jury impaneled by the 178th District Court. *See* TEX. GOV'T CODE ANN. § 74.094; *Bourque,* 156 S.W.3d at 678. Accordingly, we hold that the trial court had jurisdiction over Davis's case.

## II. Felony Enhancement

Davis next contends that the trial court improperly used his juvenile adjudication to enhance his conviction, and without the enhancement, 17 years' confinement exceeds the proper sentencing range of 2 to 10 years.

Davis was convicted of aggravated assault while evading arrest. *See* TEX. PENAL CODE ANN. § 38.04(a) (a person who intentionally flees from a peace officer commits the offense of evading arrest); TEX. PENAL CODE ANN. § 38.04(b)(2) (a person who causes serious bodily injury to another as a result of fleeing from arrest commits the offense of aggravated assault in the third degree). As a third-degree felony, aggravated assault while evading arrest is subject to enhancement by a prior felony conviction. *See* TEX. PENAL CODE ANN. § 12.42 (West 2015) (a person who commits a third-degree felony with a prior felony conviction may be assessed a punishment within the range for a second-degree felony with exception of certain state jail felonies.). The felony enhancement that the trial court applied in this case increased Davis's possible punishment from a range of 2 to 10 years to a range of 2 to 20 years. *See* TEX. PENAL CODE ANN. §§ 12.33–34 (West 2009).

Whether the trial court was correct in applying Davis's juvenile adjudication to increase the sentencing range turns on the application of the penal code provisions that govern juvenile offenses. At the time of Davis's conviction, a delinquency adjudication based on conduct that constitutes a felony offense and results in commitment to juvenile detention counted as a felony conviction for sentencing enhancement purposes. *See* TEX. PENAL CODE ANN. § 12.42(f) (West 2015) ("[A]n adjudication by a juvenile court ... that a child engaged in delinquent conduct ... constituting a felony offense for which the child is

committed to the Juvenile Justice Department ... is a final felony conviction"). Davis was adjudicated delinquent for committing a burglary of a habitation, which is conduct that constitutes a felony offense. *See* TEX. PENAL CODE ANN. § 30.02 (West 1999).

In his reply brief, Davis argues that he was not convicted of felony burglary of a habitation as charged in the indictment; instead, he was adjudicated delinquent for burglary of a habitation, and thus, the State failed to prove the enhancement as charged. Davis, however, did not object to the form of the indictment, which charged the offense of burglary of a habitation and stated the juvenile court cause number. Rather, he pleaded "true" to the felony enhancement paragraph. The reporter's record filed in this cause number supports Davis's plea.

The PSI report reflects that, after receiving probation for burglary of a habitation in 2006, Davis's probation was revoked in 2007 and he was committed to a juvenile detention facility. When Davis was convicted, Texas law considered his delinquency adjudication was considered "a final felony conviction." *See* Act of May 31, 1995, 74th Leg. R. S., ch. 262 § 78, 1995 Tex. Sess. Law Serv. 2581 (West) (to be codified at TEX. PENAL CODE § 12.42(j)) (adding section). Because the record contains evidence supporting Davis's plea of "true" to the enhancement paragraph, and the adjudicated delinquency constituted a "felony conviction" for enhancement purposes, we hold that the trial court did not impose an unlawful sentence outside the statutory range.

## III. District Clerk's Fee

Finally, Davis challenges the trial court's award of a statutory $40 clerk's fee as a court cost, contending that the fee is facially unconstitutional. *See* TEX. CODE CRIM. PROC. ANN. art. 102.005 (West 2005). The burden rests upon the individual who challenges a statute to establish its unconstitutionality, and we make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Peraza v. State*, 467 S.W.3d 508, 514–15 (Tex. Crim. App. 2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 1188, 194 L.Ed.2d 202 (2016).

■ A facial constitutional challenge attacks the statute itself as opposed to a particular application of the statute. *Id.* at 517. To prevail in a facial challenge, a defendant must establish that no set of circumstances exists under which the statute would be constitutional. *Id.*

■ Statutes assessing court costs must provide that that the costs be allocated for legitimate criminal justice purposes lest they violate the separation-of-powers clause by functioning as a tax. *Id.* Thus, to successfully mount a facial challenge to a statutory court fee, the defendant must show that the statute actually authorizes or prohibits conduct in violation of the Constitution. *Id.*

■ Davis acknowledges that the statutory purposes for the fee are constitutional but claims that the funds nevertheless might be spent for a purpose not contemplated by the statute. In *Peraza*, however, the Court of Criminal Appeals rejected this argument. It held that, absent an as-applied challenge, when analyzing statutes imposing fees, courts should consider only those purposes actually contemplated by the statute. *See Peraza*, 467 S.W.3d 508, 514–15. Thus, a challenge cannot demonstrate the statute is facially unconstitutional based on how the revenues might be spent in practice. *Id.* Following *Peraza*, we hold that the fee imposed by Article 102.005 is not a facially unconstitutional tax.

258

## CONCLUSION

We affirm the judgment of the trial court.